WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Susan Wells Peterson,<br><br>                Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>                Defendant. | No. CV-13-00185-TUC-BPV<br><br>**ORDER** |

Plaintiff, Susan Wells Peterson, filed this action for review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).  The United States Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636 (c) and Fed.R.Civ.P. 73, having received the written consent of both parties.

**I.  PROCEDURAL HISTORY**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on May 21, 2010, with a protective filing date of May 13, 2010, alleging an onset of disability beginning November 5, 2006 due to post-traumatic stress disorder, severe anxiety, fibromyalgia and depression. Transcript/Administrative Record ("Tr.") 22, 183-186, 200, 204. The application was denied initially and on reconsideration. Tr. 72, 83. A hearing before an Administrative Law Judge ("ALJ") was held on July 25, 2011, and was

continued to September 21, 2011. Tr. 35-71. The ALJ issued a decision on October 24, 2011, finding Plaintiff not disabled within the meaning of the Social Security Act. Tr. 19-30. This decision became the Commissioner's final decision when the Appeals Council denied review. Tr. 1-3.

Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Doc. 1) After considering the record before the Court and the parties' briefing of the issues, the Court reverses Defendant's decision and remands for an immediate award of benefits.

**II.    THE RECORD ON APPEAL**

A.  <u>Plaintiff's Background and Statements in the Record</u>

Plaintiff was thirty-one years of age at the date of alleged onset, with a GED and two years of college and past relevant work as a correctional officer, customer service representative and manager of a coffee shop.  Tr. 200, 205.

Plaintiff testified at her hearing before the ALJ on July 25, 2011, continued to September 21, 2011, that she had not worked since November, 2008 after she was sexually assaulted while working as a correctional officer at an Arizona State Prison Tr. 59, 61-62. Plaintiff testified that she had no history of any mental health issues, depression, anxiety or posttraumatic stress, (Tr. 62) but, as a result of the sexual assault:

> It's made everything really difficult. Even thoughts of suicide. Not wanting to be around my own family. I don't like being around a lot of people. I get high anxiety. I get, I don't like being around men. I forget a lot of stuff. I leave things on the stove and I forget to turn them off. I'm so forgetful that I even forget my prescriptions at my, Dr. [Reckart's] office. I don't know how to drive anymore. I get nightmares. I get mad at myself and I close

      down and then I, I find myself snapping at my kids and I don't want to be like that."

Tr. 63. Plaintiff has four children, aged 15, 12, 10, and two months old. Tr. 57. She cares primarily for the baby during the day, and her older children are mostly self-sufficient. Tr. 57. Plaintiff testified that she gets only two to four hours of sleep a night, interrupted by nightmares, has trouble reading and concentrating, and is overly emotional. Tr. 64. She does not think she could return to any of her past work because she can't concentrate and her anxiety is too high, she couldn't function or cope with long hours and tasks. Tr. 68. She usually spends her day in her pajamas and stays in her bedroom. Tr. 66. She gets panic attacks from one to three times a week. Tr. 67. She takes classes part-time at Pima Community College with a goal of getting a degree as a registered nurse. Tr. 38. Plaintiff hopes to go back to work and have a career in the future. Tr. 62.

      Plaintiff was under the care of Leslie Morato and Dr. Marla Reckart, and was previously taking medications for mental health problems, including Celexa, Trazodone, Risperdal, Alprazolam, and Zoloft, but, at the time of the hearing, because she was breastfeeding her newborn, she was on different antidepressants and sleep medications. Tr. 65. When she takes these medications, she has side effects consisting of drowsiness, stuffy nose, dry mouth, headaches, nausea, and constipation. Tr. 66.

      A vocational expert ("VE") testified that Plaintiff's past relevant work as a correction officer was medium exertion work, and semi-skilled; as an assistant manager of a retail establishment was light exertion work and skilled; and her work in customer service was light exertion work and semi-skilled. Tr. 42. The VE testified that if Plaintiff

had no exertional limits but with nonexertional limits of limited contact with the public, and a job that has no more than moderate stress, she could work as a janitor cleaner, courier messenger, and in production assembly as a wrapper. Tr. 42-43.

The VE testified that, considering the limitations from Dr. Reckart's records, Plaintiff could not return to her work as a correctional officer, and would not be able to perform the jobs as janitor cleaner, courier messenger, and wrapper. Tr. 45. The VE agreed that the marked and moderate restrictions noted by Dr. Reckart would preclude any job that exists in reasonable numbers in the national economy. Tr. 45. The marked restrictions in completing a workday or week without interruption would preclude employment because she would not be able to maintain employment with absences. Tr. 45. A marked restriction in the ability to accept instruction and respond appropriately to criticism from supervisors would also preclude employment. Tr. 46. If Plaintiff were homebound, and can't or won't leave her home, she couldn't work for an employer in the outside sector. Tr. 46.

B. Relevant Medical Evidence Before the ALJ[1]

1) *Treating Sources*

**a.  Andrew Johnston, M.D.**

Plaintiff saw her primary care physician, Andrew Johnston, M.D., on November 6, 2008. Tr. 341-42. She reported to him that she was having anxiety and depression

---

[1] Plaintiff raises no issues regarding the findings of the ALJ in respect to physical or exertional limitations, thus the Court reviews only the evidence related to Plaintiff's claim that the ALJ erroneously assessed her mental impairments.

- 4 -

stemming from incidents of sexual harassment at work. Tr. 341. She reported having panic attacks in the middle of the night. Tr. 341. She had lost seven pounds in less than a year. Tr. 341. Dr. Johnston assessed situational anxiety with panic attacks and depression, and recommended counseling, and medications, and follow up in 3 weeks. Tr. 341-42. At her second appointment on November 13, 2008, she was evaluated for an injury sustained in what she described as an assault by a coworker the week prior, where he tried to kiss her and lifted her up onto a countertop, causing bruising and muscle strains or contusions. Tr. 339-40. Plaintiff had lost four pounds from the previous week. Tr. 340. Dr. Johnston assessed Plaintiff with PTSD, and encouraged Plaintiff to continue counseling, to not return to work at all, and to return to his office in three weeks. Tr. 340. By December 12, 2008, Plaintiff was seeing a psychiatrist and a counselor, and Dr. Johnston noted Plaintiff looked as though she's starting to improve. Tr. 338. Dr. Johnston encouraged her to follow her psychiatrist's advice concerning medications and to follow up with her counselor and psychiatrist. Tr. 338.

### b. Leslie E. Morato, LCSW

Plaintiff began seeing a therapist, Leslie E. Morato, LCSW, in November 2008 after the incident at work. Tr. 362-64. Ms. Morato noted that Plaintiff had a neat appearance, average sociability, good eye contract, clear and coherent speech, normal remote memories, logical associations, appropriate content, normal perception, fair judgment, fair insight, and normal motor skills, but also appeared anxious and depressed, and reported appetite loss, weight loss, disturbed sleep with nightmares, and decreased

energy, libido, self-esteem, concentration, and memory (Tr. 364). Ms. Morato requested a six-week medical leave for Plaintiff while she was evaluated and stabilized, and referral to a doctor for medication review. Tr. 334. On December 11, 2008, Plaintiff reported still having a rough time, with crying and memory problems. Ms. Morato advised her on some sleep techniques. Tr. 361, 380.  In March, 2009, Plaintiff was sleeping better with medication, but still suffering from weekly panic attacks, and from nightmares. Although Plaintiff reported her attorney was trying to get her a better position, Dr. Morato felt Plaintiff was not ready to return to work. Tr. 358. By April, 2009, Ms. Morato found improvement in Plaintiff once she removed herself from the hostile work environment and began medication. Tr. 335. Ms. Morato opined that Plaintiff is suffering from both panic attacks and post-traumatic stress disorder, and should not return to her previous position at the prison for fear of relapse. Tr. 335. In May, 2009, Plaintiff's anxiety was still up and down, and she was not sleeping well and having nightmares. Tr. 355. In June, 2009, Plaintiff reported having lots of memory problems. Tr. 354. On September 2, 2009, Plaintiff reported taking classes in baking and a writing class. Tr. 352. On September 23, 2009, Plaintiff reported increased anxiety, and had run out of medication because she was having insurance problems. Tr. 350. In November, 2009, Plaintiff reported she was still having nightmares, but was working hard in school and enjoying it. Tr. 349.

### c. Marla A. Reckart, M.D.

In December 2008, psychiatrist Marla A. Reckart, M.D., began treating Peterson. Tr. 376, 382-84. The record includes Dr. Reckart's clinic notes. Tr. 366-67, 371-74, 380,

382-85, 397-99. In February 2009, Dr. Reckart opined that Peterson was unable to return to work and needed an "extension" until June 1, 2009. Tr. 379. In March 2010, Dr. Reckart reviewed her treatment of Plaintiff, including interruptions of treatment, concluding that Plaintiff presented in December, 2008 with depression, anxiety, panic attacks, flashback, and nightmares, and significantly, with no previous psychiatric history prior to the incidents which occurred at her work. Tr. at 376. At that time, Dr. Reckart diagnosed Plaintiff with major depression, and acute traumatic stress disorder. Tr. 376. After a few months, and with medication adjustments, Plaintiff began to feel better. Tr. 376. In Fall of 2009, however, Plaintiff suffered a relapse after losing health insurance and stopping medication due to cost, as well as the stress caused by investigation into the harassment. Tr. 376. In December, 2009, she had significantly improved on lower cost medication. Tr. 376. Dr. Reckart concluded in the March 2010 letter:

> [Ms. Peterson's] prognosis is good, especially in the long term. Most patients are recommended to stay on their medication for two years or more, and I foresee Ms. Peterson continuing her medication about that time. I doubt if she will be able to return to work with the Department of Corrections, but I do foresee her returning to full employment in other areas.

Tr. 376.

In April, 2010, Dr. Reckart advised that Plaintiff's new return to work date was estimated at June 1, 2011. Tr. 375. In June, 2010, Plaintiff was doing "okay", and trying to get to go to vet tech school. Tr. 371. She still had nightmares, anxiety, and flashbacks, and needed medication to try to go out to the store. In July, 2010, she reported a decrease in flashbacks and nightmares, but was still fearful going into a store for fear of running

into the men who harassed her. Tr. 371. In August, 2010, Dr. Reckart opined in a letter to Plaintiff's attorney that Plaintiff's "Acute Traumatic Stress Disorder has evolved into Post Traumatic Stress Disorder" and Plaintiff continues to need treatment in the form of medication and psychotherapy, and would never be able to return to her previous work at the Department of Corrections. Tr. 370.

In September 2010, Dr. Reckart provided detailed opinions about Peterson's mental limitations in a Mental Work Tolerance Recommendations form. Tr. 402-04. According to Dr. Reckart, Plaintiff had 'marked' limitations of her abilities to complete a workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without more than the normal rest periods; interact appropriately with the general public; and accept instructions and respond appropriately to criticism from supervisors. Tr. 403. "MARKEDLY LIMITED means the claimant is unable to perform the activity at all or is unable to perform it more than 50% of the time." Tr. 402. According to Dr. Reckart, Plaintiff had numerous 'moderate' limitations, including her ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; work in coordination with or proximity to others without being distracted by them; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting. Tr. 402-04. "MODERATELY LIMITED means the claimant is frequently unable to adequately perform the activity, but could perform it more than 50% of the time." Tr. 402.

In June 2011, Dr. Reckart opined that Peterson was unable to work or return to work indefinitely. Tr. 400-01.

### 2) *Non-Examining State Agency Medical Source*

In June, 2010, non-examining State-agency physician, Robert Estes, M.D., reviewed the medical evidence and completed a Psychiatric Review Technique (PRT), to assist in the determination of disability. Tr. 77-81. Dr. Estes concluded that Plaintiff's mental residual functional capacity was as follows: "Claimant retains the ability to understand, remember and carry out one and two step instructions and tasks, with minimal changes, in a setting of low social contact." Tr. 81.

On July 2010, non-examining State-agency psychologist, Randall J. Garland, Ph.D., reviewed the medical evidence and completed a Psychiatric Review Technique (PRT), affirming the findings of Dr. Estes. Tr. 91.

### 3) *The ALJ's Findings*

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 5, 2008. Tr. 24, ¶ 2. The ALJ found that Plaintiff has multiple severe impairments: depressive disorder, anxiety disorder, and posttraumatic stress disorder. Tr. 24, ¶ 3. The ALJ found that Plaintiff had the medically determinable impairments of fibromyalgia, back pain, and lumbar thoracic outlet syndrome, but that these impairments were nonsevere. Tr. 24. The ALJ found that while Plaintiff's impairments do not meet or equal a listed impairment (Tr. 24, ¶ 4), they do preclude Plaintiff from performing her past relevant work as a correction officer, assistant manager

and customer service. Tr. 29, ¶ 5. The ALJ stated that the RFC determination reflected the degree of limitation the ALJ found in the "paragraph B" mental function analysis. Tr. 26. The ALJ relied on Dr. Reckart's March 2010 statement, and found that Plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: can understand, remember, and carry out simple one or two-step instructions, can relate and interact with supervisors, co-workers, and limited contact only with the public, can maintain concentration and attention for simple repetitive work, and can tolerate low to moderate job-related stress. Tr. 26, ¶ 5; 27.  At step five, the ALJ considered Plaintiff's RFC in conjunction with the Medical-Vocational Guidelines, her age, education and work experience, and testimony that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, and concluded that Plaintiff is not disabled. Tr. 29-30, ¶¶ 5, 9-11.

**III.   DISCUSSION**

      A.  Argument

Plaintiff raises three points of error. Plaintiff contends that the ALJ erred by failing to formulate a hypothetical question to the VE that reflected the ALJ's RFC assessment; failed to properly evaluate treating source Dr. Reckart's opinions; and failed to evaluate the determination of non-examining State-agency psychologist, Dr. Estes, as opinion evidence. (Doc. 15) The Commissioner contends that the Commissioner's decision is supported by substantial evidence and is free of legal error. (Doc. 21).

B. Standard of Review

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Commissioner's decision to deny benefits "should be upheld unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). In determining whether the decision is supported by substantial evidence, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* (quoting *Robbins v. Soc.Sec.Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

Whether a claimant is disabled is determined using a five-step evaluation process. To establish disability, the claimant must show (1) she has not worked since the alleged disability onset date, (2) she has a severe impairment, and (3) her impairment meets or equals a listed impairment or (4) her residual functional capacity (RFC) precludes her from performing her past work. At step five, the Commissioner must show that the claimant is able to perform other work. *See* 20 C.F.R. §§ 404.1520(a)-(g).

C. Analysis

*1) Dr. Reckart's opinion*

The ALJ acknowledged Dr. Reckart as Plaintiff's treating psychiatrist and based her RFC assessment on Dr. Reckart's March 2010 statement. Tr. 27.  The ALJ gave great weight to Dr. Reckart's March 2010 assessment because it was "consistent with the

record as a whole, and with the conclusions reached in [the ALJ's] decision." Tr. 28. The ALJ gave Dr. Reckart's September 2010 opinion little weight because it was "too restrictive in light of the overall record." Tr. 28. The ALJ gave Dr. Reckart's June 2011 opinion little weight because it "contrasted sharply with her March 2010 statement, and because it was made for purposes unrelated to our rules and regulations." Tr. 29.

Where a treating doctor's ultimate conclusion is contradicted, as in this case by Drs. Estes and Garland, it may be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record. *Carmickle v. Comm'r Soc.Sec. Admin.,* 533 F.3d 1155, 1164 (9th Cir. 2008)(citing *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir. 1983)); *see also Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (detailed, reasoned, and legitimate rationales required to reject treating doctor's ultimate conclusions). When rejecting the opinion of a treating physician, the ALJ can meet this "'burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The Social Security Administration has explained that an ALJ's finding that a treating source medical opinion is not well-supported by medically acceptable evidence or is inconsistent with substantial evidence in the record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527). Treating source medical opinions are still entitled to deference and, "[i]n many cases, will

be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Orn*, 495 F.3d at 632; *see also Murray,* 722 F.2d at 502 ("If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.")

As non-examining physicians, Drs. Estes' and Garland's opinions cannot, alone, "constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). Further, Drs. Estes and Garland did not have the benefit of either the September 2010 or June 2011 opinions from Dr. Reckart for purposes of their review. *See* Tr. 77, 90.

Although the consistency of a medical opinion with the record as a whole is one factor relevant to evaluating a medical opinion, *see Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007), the ALJ's finding that Dr. Reckart's September 2010 opinion is "too restrictive in light of the overall record" (Tr. 28) does not set forth the specific detail necessary, nor does it achieve the level of specificity required to reject a treating physician's conclusion. *See Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required… ."). The ALJ addressed only a handful of Dr. Reckart's treatment notes (Tr. 371-74), ignoring evidence during that same time period that, despite reporting that Plaintiff is "doing okay" and "trying to

get to go to vet tech school" she was still having nightmares and anxiety, required medication to go out to the sore, was still having flashbacks, was still stressed, was afraid to go to the Walmart, was still panicking, was still a little agoraphobic, was "falling apart over the investigation" and was having nightmares and panic attacks. Tr. 371-74. The ALJ also ignored more recent evidence, from January through April, 2011, that Plaintiff's mood was "up and down", was feeling down and was crying, was having a hard time sleeping, was having difficulty concentrating, was forgetful, down and depressed, and hides in the aisles at the grocery store if someone shows up, and dropped a class at school because she couldn't concentrate. Tr. 366-367. From April, 2011 through July, 2011, Plaintiff reported that although she was taking a yoga class for joint pain in pregnancy she found it hard to go because of anxiety, she was stressed, was feeling more depressed and staying in her room, she was anxious and still having nightmares. Tr. 411-12. The ALJ errs by focusing on only the evidence that supports her conclusion while ignoring the evidence in the record that supports Dr. Reckart's opinion. The ALJ's conclusion that Dr. Reckart's opinion is too restrictive in light of the overall record is not supported by the substantial evidence in this case.

The Commissioner argues that the ALJ's determination that Plaintiff's activities were inconsistent with "complaints of disabling symptoms" (Tr. 28) is supported by the inconsistency between Dr. Reckart's opinion and Plaintiff's report that she attends college part-time and is the primary care provider for her newborn. The Commissioner's argument is unpersuasive. First, when Plaintiff testified that she was taking college

classes part-time, this consisted of taking two classes at a community college, and there is no evidence in the record two classes is equivalent to a full part-time load of classes, or, particularly given Plaintiff's difficulty in exposing herself to public situations, is equivalent to even part-time work. Tr. 38. Regardless, even if this demonstrated Plaintiff's ability to work part-time, her ability to perform this limited activity is not inconsistent with Dr. Reckart's opinion that Plaintiff is markedly limited in her ability to complete a workday and workweek without interruptions from psychologically based symptoms, *i.e.*, unable to perform it *more than 50% of the time*. Further, her ability to care for her infant at home is also not inconsistent with Dr. Reckart's opinion, nor indicative of ability to compete in the workforce. *Cf. Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, ... and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.") (internal citations and parentheticals omitted). Occasional symptom-free periods-and even the sporadic ability to work-are not inconsistent with disability. *Lester*, 81 F.3d at 833, (citing *Leidler v. Sullivan*, 885 F.2d 291, 292 n. 3 (5th Cir.1989); *Poulin v. Bowen*, 817 F.2d 865, 875 (D.C.Cir.1987)).

Finally, the ALJ errs by giving little weight to the June 2011 opinion of Dr. Reckart because, in addition to noting it contrasted with the March 2010 statement, it was "made for purposes unrelated to [the Social Security Agency's] rules and regulations."

Tr. 29. The ALJ errs by according any significance to the purpose for which the report was obtained. The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. *Lester*, 81 F.3d at 832. Neither is there any less weight granted the findings when they are procured at the behest of the claimant than when they are obtained by the Commissioner. *Id.* (citing *Ratto v. Secretary*, 839 F.Supp. 1415, 1426 (D.Or. 1993) ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits.")). While the Secretary "may introduce evidence of actual improprieties," no such evidence exists here.

To the extent the ALJ gave little weight to the June 2011 opinion because it contrasted with the March 2010 opinion, the ALJ ignores the fact that while Dr. Reckart opined in March 2010 that Plaintiff's prognosis was good, and she could foresee Plaintiff continuing on medication for two years or more and returning to full employment, this opinion by Dr. Reckart was her prognosis of Plaintiff's future condition, but the June 2011 opinion was a statement about Plaintiff's condition as it existed at the time. It would be illogical to reject Dr. Reckart's actual opinion on the basis of Dr. Reckart's predictive opinion that had not been borne out by the evidence in the record. Tr. 376.

In sum, the Court finds that substantial evidence does not support the ALJ's rejection of Dr. Reckart's opinions. Because the Court so finds, it is unnecessary to reach the Plaintiff's other points of error, because the Court further finds that in light of Dr. Reckart's opinion, and the VE's testimony, Plaintiff was clearly disabled.

D. Appropriate Remedy

The decision to remand for further development of the record or for an award of benefits is within the discretion of the Court. 42 U.S.C. § 405(g); *see Harman v. Apfel*, 211 F.3d 1172, 1173-74 (9th Cir. 2000). This Circuit has held that an action should be remanded for an award of benefits where the ALJ has failed to provide legally sufficient reasons for rejecting evidence, no outstanding issue remains that must be resolved before determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled were the rejected evidence credited as true. *See, e.g., Varney v. Sec'y of HHS*, 859 F.2d 1396, 1400 (9th Cir. 1988).

After applying the credit-as-true rule to improperly discredited evidence, no outstanding issue remains to be resolved before determining that Plaintiff is entitled to benefits. The impartial vocational expert testified that the limitations found by Dr. Reckart, if adopted, would preclude sustained work. Tr. 45-46. Because it is clear that the ALJ would be required to find Plaintiff disabled, *see Benecke v. Barnhart*, 379 F.3d 587, 593-95 (9th Cir. 2004) ("Because the ALJ failed to provide legally sufficient reasons for rejecting Benecke's testimony and her treating physicians' opinions, we credit the evidence as true"), the Court will remand the case for an award of benefits. *See Orn,* 495 F.3d at 640 (remanding for an award of benefits where it was "'clear from the record that the ALJ would be required to determine the claimant disabled'") (citation omitted). Given this ruling, the Court need not address Plaintiff's arguments that the ALJ erred by failing to formulate a hypothetical question to the VE that reflected the ALJ's RFC

assessment and failed to evaluate the determination of non-examining State-agency psychologist, Dr. Estes, as opinion evidence.

Accordingly,

IT IS ORDERED:

    1. Defendant's decision denying benefits is REVERSED.

    2. The case is REMANDED to Defendant for an award of benefits.

    3. The Clerk is directed to enter judgment accordingly.

    Dated this 11th day of February, 2014.

*/s/ Bernardo P. Velasco*
Bernardo P. Velasco
United States Magistrate Judge